UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIANE WEISS,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>HOLLAND AMERICA LINE INC., a Washington Corporation, HOLLAND AMERICA LINE N.V., a Curacao Corporation, and HAL ANTILLEN N.V., a Curacao Corporation,<br><br>　　　　　　　　Defendants. | NO. C12-2105 RSM<br><br>ORDER ON SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Motion for Summary Judgment by Defendants Holland America Line, Inc., Holland America Line N.V., and HAL Antillen N.V. Dkt. # 15. Plaintiff was a passenger aboard one of Defendants' cruises when she suffered an injury from a fall during an organized charity walk. Defendants move for dismissal of Plaintiff's sole claim for negligence. For the reasons stated herein, Defendants' motion is DENIED.

**Factual Background**

On December 11, 2011, Plaintiff, Diane Weiss, and her husband embarked on a seven day cruise aboard a Holland America Line ("HAL") vessel, the M/V WESTERDAM ("Westerdam") from Fort Lauderdale, Florida. Ms. Weiss, a then 69-year old resident of Delray Beach, Florida, is a veteran cruiser, having taken approximately 20 cruises over the

ORDER DENYING SUMMARY JUDGMENT – 1

past 20 years. During each of the first five mornings of the instant cruise, Ms. Weiss walked with a friend for half an hour on the Westerdam's upper deck walking track, covering a distance of approximately three miles. Dkt. # 16, Ex. B., pp. 18-19. Plaintiff did not experience problems with her walking or balance during these routine exercises. *Id.* at p. 20. During the first five days of the cruise, the Westerdam experienced generally calm seas and low swell with relatively little vessel motion. *See* Dkt. # 20, ¶ 5. The wind began to pick up late on December 15, 2011, increasing to "moderate" levels at 10:00am on December 16, as recorded in the vessel's logs. *Id.* Ms. Weiss described the weather conditions on December 16 as generally "clear, a little choppy, some whitecaps," with a little wind. Dkt. # 16, Ex. B, pp. 22-23.

On December 16, 2011, Ms. Weiss, a breast cancer survivor, signed up to participate in a walk-for-charity event, *On Deck for the Cure*, in support of the Susan G. Komen Foundation. Participants in this non-competitive event aimed to walk nine laps of the Westerdam's promenade deck, or three miles, though they were free to cease participation at any point. Dkt. # 16, Ex. B., pp. 28-29; Dkt. # 23, Ex. F. Immediately prior to the event, Ms. Weiss paid her participation fee, received her t-shirt, and listened to an introductory talk by lifestylist Nicholas Reiersgard, the crewmember in charge of the walk. Dkt. # 16, Ex. B, p. 25. The charity walk began at 2:00pm and progressed without incident until Ms. Weiss had completed 6 or 7 laps. At this point, Ms. Weiss reportedly felt the Westerdam starting "to rock a little." As she rounded the stern and turned right toward the bow, the ship allegedly gave "one big surge," at which point she lost her balance on the dry deck and hit her wrist against a metal support structure as she instinctively sought to brace her fall. Dkt. # 16, Ex. B., p. 34.

ORDER DENYING SUMMARY JUDGMENT – 2

She suffered a fracture to her wrist, which resulted in three surgeries, including a wrist replacement. Dkt. # 19, ¶ 9. An additional charity walk participant, Herbert Basson, fell in approximately the same location. He recalls that he let go of a rail that he was holding and fell as the Westerdam "went for a sleigh ride." Dkt. # 18, Ex. 4, p. 12. Neither Weiss nor Basson observed other participants fall. *Id.*; Dkt. # 20, p. 35.

      An hourly recording by bridge crew in the Westerdam's NAPA log indicated that at the start of the race, the wind was at 31.5 knots (nautical miles per hour), described as "near gale" conditions. Dkt. # 18, Ex. 1, p. 4; Ex. 5, p. 57. The swell was described as moderate, with a sea force of 5 to 6 on the Beaufort scale, and the vessel state as "pitching and rolling." *Id.* at Ex. 1, p. 5; Ex. 5, p. 53. The accident report recorded for Ms. Weiss' injury describes this pitching as "slight[]" and rolling as "gentle." Dkt. # 16, Ex. A.  Because the winds were hitting the ship from the starboard quarter toward the stern, the relative wind speed experienced by passengers aboard the ship was only 20 knots. Dkt. # 18, Ex. 5, p. 47. According to Third Officer Marco Boere, the Westerdam had deployed one of two stabilizers on December 16; two would have been deployed in the event of heavy rolling. Dkt. # 23, Ex. A., p. 59. According to Third Officer Marco Boere, Westerdam officers did not institute particularized safety protocols during the walkathon, but officers on watch did carry out "constant monitoring of the normal weather conditions." *Id.* at 38. These procedures authorize those on watch to impose a deck ban as appropriate. *Id.* at 39. No deck ban was imposed during the day of the incident.

ORDER DENYING SUMMARY JUDGMENT – 3

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment on all or part of their claims. Summary Judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted).

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party defeats a motion for summary judgment if she "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. "[T]he inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However,

ORDER DENYING SUMMARY JUDGMENT – 4

conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F.3d 337, 345 (9th Cir. 1995).

## Analysis

### A. Motions to Strike

As a threshold matter, Defendants move the Court to strike both of Plaintiff's proffered expert opinions. In ruling on a summary judgment motion, the Court is restricted to considering evidence that is admissible. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Supporting or opposing affidavits must be based on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

Rule 702 of the Federal Rules of Evidence provides that expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The district court's role as a gatekeeper "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is…valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.,* 409 U.S. 579, 592-93 (1993). "This duty to act as a gatekeeper and to assure the reliability of proffered expert testimony before admitting it applies to all (not just scientific) expert testimony." *Samuels v. Holland America Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011)(internal citations and quotations omitted). The word "knowledge" in this context "connotes more than subjective belief or unsupported speculation." *Id.*, citing *Daubert*, 509 U.S. at 590. The court's inquiry

ORDER DENYING SUMMARY JUDGMENT – 5

under Rule 702 is a "flexible" one, and the court tailors its choice and application of the *Daubert* factors to the "nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)(internal quotation omitted); *see also*, *Samuels*, 656 F.3d at 952.

Defendants contend that Declaration of Kenneth Nemire should be stricken as he has failed to establish personal knowledge or competency to testify at trial on the issues raised or demonstrated that his opinions are supported by sufficient facts or data. Mr. Nemire, a Human Factors Engineering Analysis consultant with a PhD in Experimental Psychology, provided a declaration based on a report, opining that HAL failed to take adequate measures to mitigate the hazard that allegedly caused Ms. Weiss' injury. Dkt. ## 21, 26. The Court agrees that Mr. Nemire has failed to substantiate that he is qualified to opine on the particular contexts of cruise ship safety or charity walk risk management on the basis of relevant experience or training. More fatally, Mr. Nemire's report lacks an adequate basis in facts or data for the conclusions that he draws regarding safety concerns for charity walks as opposed to normal perambulation, the foreseeable physiological experiences of the *On Deck for a Cure* participants, or the effects of vessel motion on participants related to weather conditions at the time of the event. Certain of Mr. Nemire's opinions additionally cannot be applied to the facts. For instance, the motivations of participants professed in his declaration are contradicted by the non-competitive nature of the event, the option to cease walking at any point, and the fact that participants' donations and receipt of t-shirts were accomplished before the event began and not tied to performance. As a whole, Mr. Nemire's conclusory

ORDER DENYING SUMMARY JUDGMENT – 6

assertions are insufficiently helpful or supported. Paragraphs 4 through 8 of his Declaration (Dkt. # 21) will accordingly be stricken.

The Court does not, however, agree that the Declaration of Wil Petrich suffers from these same fatal flaws. Defendants contend that Mr. Petrich's opinions about the standards for weather warnings and deck bans do not qualify as expert given his lack of personal knowledge and further that he fails to support his conclusions with facts or data. Plaintiff maintains that Mr. Petrich is well-qualified based on his 20 years of experience working on passenger vessels in the Alaskan ferry system, including as Pilot and Chief Mate aboard the 400-foot long, 600-passenger COLUMBIA and as an able-bodied seaman on ships longer than the Westerdam, as well as his maintenance of a Coast Guard license qualifying him to command vessels similar to the Westerdam. Dkt. # 27. His duties on these ships included making determinations about appropriate passenger safety protocols in light of weather and sea conditions. *Id.* at ¶¶ 2-3.  The Court is not prepared to determine that Mr. Petrich lacks expertise to testify about weather-related safety procedures on the basis of this training and experience on vessels similar to that at issue in this case. Concerns about Mr. Petrich's lack of experience in the cruise ship industry in particular go the weight of his testimony rather than its admissibility. *See e.g.*, *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993). Similarly, where Mr. Petrich's opinions are non-scientific and instead based on personal experience on ocean-going vessels, their reliability and consequent admissibility need not hinge on support by studies and data. *See Kumho Tire Co.*, 526 U.S. at 150 ("In other cases, the relevant reliability concerns may focus upon personal knowledge or experience."). The Court accordingly declines to strike Mr. Petrich's declaration.

ORDER DENYING SUMMARY JUDGMENT – 7

### B. Negligence Claim

To prevail on her maritime negligence action, Plaintiff must establish that (1) Defendants owed her a duty of care; (2) Defendants breached that duty; (3) Plaintiff was injured; and (4) Defendants' breach proximately caused her injuries. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1070; *Samuels*, 656 F.3d at 953.

#### 1. Duty of Care

It is well established that the operator of a vessel in navigable waters owes its passengers "a duty of reasonable care under the circumstances." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959). "The degree of care considered reasonable in a particular circumstance depends upon the 'extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger.'" *Samuels*, 656 F.3d at 953, citing *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983). Where the condition leading to the plaintiff's claim is one that is commonly encountered and not unique to the maritime context, a carrier must have "'actual or constructive notice of the risk-creating condition' before it can be held liable." *Id.* at 953, citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). By contrast, a heightened degree of care is required where the risk-creating condition is peculiar to the maritime context. *See Catalina Cruises v. Luna*, 137 F.3d 1422, 1425-26 (9th Cir. 1998)(concluding that "where the risk is great because of high seas, an increased amount of care and precaution is reasonable"); *Kirk v. Holland American Line*, 616 F.Supp. 2d 1101, 1105 (W.D. Wash. 2007)(declining to conclude that risks associated with disembarkation are not unique to cruises); *Kearns v. Celebrity Cruises, Inc.*, 1997 WL 729108, *2 (S.D.N.Y.

ORDER DENYING SUMMARY JUDGMENT – 8

1997)(holding that "given the rough weather attending plaintiff's injury, [the defendant cruiseline] owed an enhanced duty of care to its passengers").

Defendants contend that HAL should not be held to a heightened standard of care because the potential to sustain injury during a charity walk is not unique to maritime travel. Defendants' argument misses the mark. Plaintiff does not contend that the risk-creating condition was the charity walk in itself but rather the occurrence of the charity walk during weather conditions with rough seas, near-gale winds, and moderate swells.  Unlike in *Rainey*, 709 F.2d 169, where a passenger tripped on a stool while dancing, the instant hazard allegedly arose from the movement of the vessel, a condition that is decidedly peculiar to the maritime context. Ms. Weiss and Mr. Basson both report falling as a consequence of a vessel lurch; such destabilizing movement is clearly not to be expected in non-maritime settings. This case is accordingly closer to *In re Catalina Cruises*, 137 F.3d 1422, in which the court held the vessel operator to a high standard of care because the hazard-creating condition was specific to the passage of the vessel on the high seas. Viewing the facts in the light most favorable to Plaintiff, the Court determines that Defendants owed a heightened duty of care under the circumstances to the charity walk participants, including Plaintiff.

Defendants contend that even if the degree of risk is elevated, any increase in the degree of required care would be minimal. Indeed, ship records report only slight pitching and gentle rolling, and neither Ms. Weiss nor Mr. Basson observed others fall in response to vessel motion. Dkt. # 16, Ex. A. At the same time, the sea conditions were undeniably rougher on October 16 than experienced by Westerdam passengers on previous cruise days and rough enough to merit the deployment of one of two stabilizers. Dkt. # 23, Ex. A., p. 59.

ORDER DENYING SUMMARY JUDGMENT – 9

The degree of additional risk posed by the October 16 weather conditions, and the concomitant extent to which Defendants' duty of care was elevated, consequently depends on questions of fact that the Court is not prepared to resolve at this stage of the proceedings.

### 2. Breach and Causation

"Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact." *Christensen v. Georgia-Pacific Corp.,* 279 F.3d 807, 813 (9th Cir. 2002). Questions of forseeability and causation in negligence cases particularly lend themselves to resolution by a jury. *See Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978); *Wyler*, 348 F.Supp.2d at 1210.  Such is the case here.

The Westerdam's command had a duty to reasonably foresee risks that might ordinarily attend weather-related circumstances, including the risks of injury to participants in an on-deck charity walk. *See Wyler v. Holland America Line-USA, Inc.*, 348 F.Supp.2d 1206, 1210 (W.D. Wash. 2003). While Defendants contest that Ms. Weiss' accident was foreseeable, there is no question that they were aware of weather conditions as recorded on the ship's logs, with a Beaufort reading between 5 and 6, winds at 31.5 knots, and moderate swells. There is also no question that Defendants declined to take a specialized course of action to protect the safety of the charity walk participants under these circumstances beyond routine monitoring of the weather. *See* Reiersgard Dep., Dkt. # 23, Ex. B., pp. 28-29; Boere Dep., *Id.* at Ex. A, pp. 38-39. Plaintiff has raised an issue of fact as to whether the waves at the time of the incident could have foreseeably combined to form a larger wave capable of producing a vessel surge that would destabilize an on-deck walker. *Compare* Petrich Decl.,

ORDER DENYING SUMMARY JUDGMENT – 10

Dkt. # 20, ¶ 11 ("When the swell and seas come for the same general direction, the waves can sometimes combine to form a larger wave.") *with* Boere Dep., Dkt. # 23, Ex. A, p. 55 (swell and wind waves "would be separate"). Plaintiff has also raised an issue of fact as to whether HAL's decision to hold the charity walk during these weather conditions or to implement particularized safety procedures, including issuing a weather-specific warning to walkers, fell below the standard of care. As a fact-intensive inquiry is necessary to gauge the foreseeability of injury and the reasonable course of action in light of the weather conditions during the charity walk, the Court cannot reach a determination on Plaintiff's negligence claim as a matter of law.

### 3. Open and Obvious Risk

Defendants further claim that they had no duty to warn Plaintiff of risks she might encounter during the walk related to vessel motion because the sea condition would have been open and obvious to her. Courts have consistently held that there is no duty to warn of an obvious and apparent danger. *Samuels v. Holland America Line-USA, Inc.*, 2010 WL 3937470, *2 (W.D. Wash. 2010)(cruise operator had no duty to warn of risk of undertow at beach as ocean conditions were open and obvious to injured wader); *John Morrell & Co. v. Royal Caribbean Cruises, LTD.*, 534 F.Supp.2d 1345, 1352 (S.D.Fla. 2008)(cruise ship had no duty to warn of obvious dangers of operating dune buggy on shore excursions). Defendants contend that the risk of sustaining an injury while walking, like the risk of operating a motor vehicle, *John Morrell & Co.*, 534 F.Supp. 2d at 1351, is obvious to anyone accustomed to perambulating. In particular, they claim that risk of fall would have been apparent to Plaintiff, who was not only a self-proclaimed experienced cruiser and walker but also had sufficient

ORDER DENYING SUMMARY JUDGMENT – 11

time to appreciate the conditions during the six laps she took prior to her injury. Dkt. # 15, pp. 10-12.

The Court cannot find as a matter of law that the risk of injury from the Westerdam's motion would have been open and obvious to Plaintiff. The risk to event participants was not that posed during ordinary perambulation but rather that created by vessel motion resulting from rough sea conditions. The question thus becomes whether risk of sudden vessel movement would have been clearly apparent to event participants. Plaintiff admittedly observed slightly "choppy" conditions on the day of the event, with "some whitecaps" and more wind than during previous cruising days. Dkt. # 16, Ex. B, pp. 22-23. At the same time, the extent of risk was not clearly obvious to an on-deck walker, experiencing wind at only 20 knots as opposed to the actual wind speed of 31.5 knots. Dkt. # 18, Ex. 5, p. 47. Nor would it have been obvious to a passenger that the Westerdam could surge, as Mr. Petrich declares is foreseeable during moderate swell conditions. Taking the facts in the light most favorable to the non-moving party, the Court likewise cannot ascertain as a matter of law that the risk of injury resulting from the sea conditions would have been obvious to Plaintiff.

## Conclusion

This case hinges primarily on the questions of whether the relatively rough weather conditions on October 16, 2011 created a foreseeable risk to participants in the *On Deck for a Cure* charity walk event and further whether specialized safety procedures, including cancellation or warning, would have been reasonable under the circumstances. As Plaintiff has adduced sufficient evidence to create genuine issues of fact on multiple elements of her negligence claim and for the reasons stated herein, the Court hereby ORDERS that

ORDER DENYING SUMMARY JUDGMENT – 12

Defendants' Motion for Summary Judgment (Dkt. # 15) is DENIED. The Court further ORDERS that Paragraphs 4 through 8 of the Declaration of Ken Nemire (Dkt. # 21) shall be STRICKEN.

Dated this 18th day of April 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE